UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK MALOCZEWSKI,

        Plaintiff,

                                      CASE NO:07-CV-10966

-vs-

                                      PAUL D. BORMAN

ELVIR BABIC AND SEMIR OMERAGIC,       UNITED STATES DISTRICT
JUDGE

        Defendants.

_____ /

**AMENDED OPINION AND ORDER
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**[1]

The matter before the Court is Defendants' Elvir Babic and Semir Omeragic ("Defendants") April 23, 2008 Motion for Summary Judgment. (Dkt. No. 22). Plaintiff Frank Maloczewski ("Plaintiff") filed his Response on May 22, 2008. A hearing on this matter was held July 9, 2008. For the following reasons, the Court GRANTS Defendants' motion.

**I.    BACKGROUND**

This case arises from an accident between two semi-trucks which occurred on the Ohio Turnpike on April 25, 2006.

Plaintiff is a resident of Macomb County, Michigan. (Compl. ¶ 1). Defendant Elvir Babic ("Babic") is a resident of Manchester, New Hampshire. (*Id.* ¶ 2). At the time of the accident Babic was employed by Defendant Semir Omeragic ("Omeragic") who is also a resident of Manchester, New Hampshire. (*Id.* ¶¶ 2-3).

At the time of the accident, Plaintiff was operating a 2001 Volvo freight truck with an

---

[1] The Court amends this Opinion and Order such that a typographical error in the last sentence is remedied.

Illinois license number P367422. (*Id*. ¶ 7). Babic was driving a 2000 Volvo freight truck bearing a New Hampshire plate number 5554AR. (*Id*. ¶ 8). Plaintiff was traveling eastbound I-80 in the City of North Royalton, County of Cuyahoga, Ohio. (*Id*. ¶ 7). Babic was also traveling eastbound on I-80. (*Id*. 9).

Plaintiff apparently rear-ended Babic's freight truck. (*Id*. ¶ 9). After the accident, Plaintiff had to be extracted from the vehicle by the "jaws of life" and subsequently transported to MetroHealth Medical Center in Cleveland, Ohio by "Life Flight." (Plf. Br. at 4). Plaintiff arrived at the Medical Center and was diagnosed as "pneumothorax, without open wound into thorax". (Def. Br. Ex. B, Medical Record). Plaintiff also received secondary diagnoses of: closed fractures of seven ribs; a closed fracture of the dorsal vertebra, without mention of spinal cord injury; dehydration; and hypotension. (*Id*.).

Plaintiff does not remember the accident and has been told by doctors that he suffers from short term memory loss. (Def. Br. Ex. F, Maloczewski Dep. 42). Plaintiff was in the hospital for 10 days after the accident. (*Id*. 44). Plaintiff also suffered from pneumonia which was attributable to the accident and which necessitated a separate six-day hospital stay. (Plf. Br. 5).

After the accident, Plaintiff's doctor, Donald Campbell referred him to a physical therapist, where he received treatment for 10 weeks. (Maloczewski, 45-46).

Within four months of the accident, Plaintiff was cleared by his doctor to return to work without restriction. (*Id*. 14). However, due to issues regarding a traffic violation from the instant situation Plaintiff did not return to work until the third week of October, 2006. (*Id*. 6-7). Upon his return, Plaintiff's job duties did not change and he was scheduled for approximately 70 hours per week. (*Id*. 7). However, Plaintiff explained that since the third week of October, 2006, he has been

2

allowed to take off time when he has back pain, so on average he has been working 40 hours a week. (*Id*. 8). Plaintiff testified that he has progressively been taking fewer days off. (*Id*. 10).

Plaintiff alleges that there are certain activities which he can no longer engage in or engage in the same manner since the accident: (1) playing with his grandchildren on the floor; (2) seasonal bicycle riding; (3) length of time he can drive without a break; and (4) distance he can walk. (*Id*. 15, 18). All of these are self-imposed restrictions as no doctor has instructed Plaintiff he cannot perform or should not perform these tasks. (*Id*. 15-19).

Plaintiff testifies that he is still receiving treatment for his accident injuries from his treating physician, Dr. Mark Rottenberg, specifically his lower back pain and carpal tunnel in his right wrist. (*Id*. 47-48). Plaintiff also went for treatment to an eye specialist, Dr. Darrin Levin, because of blood clots in his eyes after the accident. (*Id*. 53). On June 26, 2006, Dr. Levin found that Plaintiff "is doing extremely well from a retinal standpoint. Fortunately he has had complete resolution of the cotton-wool spots related to the blunt trauma/Purtscher's retinopathy in his right eye. His vision is quite good at this time after the update in his manifest refraction." (Def. Br. Ex. C, Retina Consultants of Michigan Report).

Plaintiff also alleges he suffers from constant headaches and has had short term memory problems. (*Id*. 57-58). However, Plaintiff states that his memory is getting progressively better. (*Id*. 58).

Dr. Rottenberg states in his November 13, 2007 medical report that Plaintiff has suffered:

1. Traumatic brain injury with residual occipital contusion.
2. Neck pain with cervical disc pathology and cervical strain with myofascial pain.
3. Multiple rib fractures with Pneumothorax which required a chest tube during acute hospitalization.
4. Back pain with T9 compression and thoracic myelopathy.

3

> 5. Low back pain with lumboscacral disc pathology and sciatica.
> 6. Adult-onset diabetes mellitus.
> 7. Right carpal tunnel syndrome.
> 8. Left ulnar neuropathy.
> 9. Diffuse peripheral neuropathy secondary to diabetes.
> 10. Hyperlipidemia.

(Plf. Br. Ex. A, Rottenberg Report at 3). The report further states:

> [a]t the present time, the patient reports that the has been working full-time as a truck driver. Unfortunately, he does need physical restrictions because of the severity of the injury to his spine and he as been advised to avoid any loading or unloading of a truck. He also needs to frequently adjust his position and should avoid repetitive or prolonged bending, twisting or lifting as well as any strenuous pushing or pulling.

(*Id.*).

Plaintiff filed the instant action on March 6, 2007 alleging: (1) Negligence against Babic and Omeragic; and (2) Vicarious Liability against Defendant Omeragic.

## II. ANALYSIS

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue

of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**B.     Choice of Law**

There is no dispute by the parties that Michigan substantive law applies to this action, where neither party is a resident of the state where the accident occurred, the victim of the accident is a resident of Michigan, and Michigan has an interest in having its law apply.

**C.     *Kreiner* Standard**

Pursuant to Michigan's No-Fault Act, "a plaintiff may recover noneconomic losses only where the plaintiff has suffered death, serious impairment of body function, or permanent serious disfigurement." Mich. Comp. Laws § 500.3135(1). The No-Fault Act defines "serious impairment of body function" as "objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." Mich. Comp. Laws § 500.3135(7).

The Michigan Supreme Court has set forth a three-step framework "for separating out those plaintiffs who meet the statutory threshold [for third-party tort recovery] from those who do not." *Krenier v. Fischer*, 471 Mich. 109, 131 (2004).

> First, a court must determine that there is no factual dispute concerning the nature and extent of the person's injuries; or if there is a factual dispute, that it is not material the determination whether the person has suffered a serious impairment of body function. . . .
>
> Second, if a court can decide the issue as a matter of law, it must next determine if an "important body function" of the plaintiff has been impaired. It is insufficient if the impairment is of an unimportant body function. Correspondingly, it is also insufficient if an important body function has been injured but not impaired. If a court finds that an important body function has in fact been impaired, it must then determine if the impairment is objectively manifested. . . . .
>
> If a court finds that an important body function has been impaired, and that the impairment is objectively manifested, it must then determine if the impairment affects the plaintiff's general ability to lead his or her normal life.

*Id.* at 131-32. Both parties agree that the *Kreiner* analytic framework applies to the instant action.

    1.     Nature and Extent of Injuries

The Court finds there is no factual dispute concerning the nature or the extent of Plaintiff's injuries, which are medically documented and undisputed by the parties.

2. Closed Head Injury

Pursuant to Mich. Comp. Laws § 500.3135(2)(a)(ii), "a question of fact for the jury is created if a licensed allopathic or osteopathic physician who regularly diagnoses or treats closed head injuries testifies under oath that there may be a serious neurological injury." *See Kreiner*, 471 Mich. at 132 n.15 (referring to the statutory section as a "special rule.").

In the instant case, Plaintiff appeared to argue that this special rule was met with a report from Plaintiff's treating physician Dr. Mark Rottenberg. (Dkt. No. 27, Updated Report). Although it clear from the record that Dr. Rottenberg is a licenced allopathic physician, there is no evidence that he "regularly diagnoses or treats closed head injuries;" nor does the unsworn report constitute testimony "under oath." Finally, the Court can find no indication from the report that Dr. Rottenberg has diagnosed Plaintiff with a "serious neurological injury."

For these reasons, the Court finds the statutory rule inapplicable to the instant case.

3. Affect on Plaintiff's 'Normal Life'

Defendants argue that whether any alleged impairment "affected [Plaintiff's] general ability to lead his life" is dispositive in the instant case. *Kreiner*, 471 Mich. at 136. To this end, Defendants argue that Plaintiff cannot satisfy the third step in *Kreiner* framework because the "record is bereft of evidence that his injuries have altered the trajectory of his life." (Defs. Br. at 12).

In *Kreiner*, Michigan Supreme Court set forth a "nonexhaustive" list of objective factors for evaluating whether a person's "normal" life has been affected: "(a) the nature and extent of the impairment, (b) the type and length of treatment required, (c) the duration of the impairment, (d) the

extent of any residual impairment, and (e) the prognosis for eventual recovery." *Id.*, 471 Mich. at 133. "The ultimate question that must be answered is whether the impairment 'affects the person's general ability to conduct the course of his or her normal life.'" *Id.* at 134. A court must also "determine how long and how pervasively his activities and abilities were affected." *Id.* 135.

In the instant case, viewing the record in a light most favorable to Plaintiff: Plaintiff spent ten days in the hospital after the accident and then another six days in the hospital due to secondary problems. Plaintiff also attended ten weeks of physical therapy. Plaintiff missed approximately six months of work; April 25, 2004 until the third week of October, due to the accident.[2] However, Plaintiff returned to his same job and works full-time, however, rather than seventy hours a week, Plaintiff now works approximately 40 hours per week. Currently, Plaintiff only complains of headaches which he controls with over-the-counter medication, pain in his right arm, pain in his lower back pain, and short-term memory loss. Plaintiff also notes that his memory loss is getting progressively better. Plaintiff currently sees his treating physician on a monthly or bimonthly basis and has been prescribed muscle relaxants and a local steroid injection for the carpal tunnel syndrome in his right arm. His physician has also suggested epidural blocks, trigger point injections for neck pain, and possible surgical decompression for his lower back pain. (*See* Rottenberg Report 3).

Defendants allege that Plaintiff's "normal life" has not been affected such that he can show a life style change significant enough to meet the statutory threshold. Defendants argue Plaintiff has returned to full-time work with no restrictions on his abilities, although he works fewer hours and takes more frequent breaks than before the accident. Defendants further note that Plaintiff has imposed restrictions on himself, including biking, walking, and playing with his grandchildren less, yet no doctor proposed those restrictions or has limited Plaintiff's activities.

---

[2] Plaintiff was authorized by his doctor to return to work one month before he did.

Plaintiff summarizes the changes in his lifestyle in his briefing, stating:

> At present, approximately two years [plus] accident, [Plaintiff] continues to have multiple problems. His injuries have continued to cost him additional or greater pay as he can no longer travel greater distances without many additional rest stops. He cannot engage in the normal course of family activities such as bike riding or playing with his grandchildren still living within his home.
>
> His relationship with his adult children has suffered as he is no longer in a position where he can comfortably afford to assist them. His marital relations have suffered most of all, since he is usually in too much pain to enjoy those rights known as consortium.[3]

(Plf. Br. 7).

After review, the Court finds no genuine issues of material fact exist regarding whether Plaintiff's post-impairment life is so changed that his general ability to lead his normal life has been adversely affected.

First, the law is clear that "self-imposed restrictions, as opposed to physician-imposed restrictions, based on real or perceived pain do not establish [the extent of any residual impairment]." *Id.*, 471 Mich. at 133 n.17; *see McDaniel v. Hemker*, 268 Mich. App. 269, 283 (2005) (explaining that a plaintiff "cannot establish the extent of her residual impairment by merely claiming that she has restricted herself from engaging in activities or making certain movements because she experiences pain."). The Michigan Court of Appeals has explained that "simply because there may be self-imposed restrictions based on pain does not mean that a plaintiff has not established a threshold injury. A trial court must examine all the evidence presented . . . . and view the totality of the circumstances . . . ." *McDaniel*, 268 Mich. App. at 285. However, in the instant case, Plaintiff's self-imposed restrictions are the only restrictions on his recreational activities.

---

[3] Plaintiff does not support his claim of loss of consortium with any evidence, nor is this assertion made in his deposition – for these reasons the Court declines to consider this allegation.

Further, it appears from the totality of the circumstances that Plaintiff cannot show that a doctor has restricted any area of his personal life in such a way that he is unable to lead his "normal" life.

Plaintiff's current treating physician does prescribe certain work restrictions; that Plaintiff needs to "avoid any loading or unloading of a truck. He also needs to frequently adjust his position and should avoid repetitive or prolonged bending, twisting or lifting as well as any strenuous pushing or pulling." (Rottenberg Report 3). However, there is no evidence in the record that Plaintiff was required prior to the accident to load or unload trucks, nor that his job entailed any pushing or pulling. Therefore, it does not appear, even in a light most favorable to Plaintiff that these work restrictions will affect his daily work routine.

Finally, as in *Kreiner*, Plaintiff's life before the accident and his life post-accident does not appear to be significantly changed. Indeed, Plaintiff continues to work full-time and his employer allows him time off if he has back pain. In *Kreiner*, the Michigan Supreme Court concluded that a plaintiff had failed to show an impairment affected his general ability to lead his life when he alleged he could only work six hour work days, rather than eight hour work days, he could still perform the core functions of his job (except for roofing) and his had minor restrictions regarding how much he could life and how long he could stand on a ladder. *Id*. 471 Mich. at 136. The Michigan court noted that "although [a] plaintiff has suffered an impairment that does have an effect on his ability to work, it is not a 'serious impairment of body function,' as defined by Legislature, because plaintiff is 'generally able' to work and the course of his normal life is otherwise unaffected." *Id*. at 137 n. 23.

In the instant case, Plaintiff remains able to work full-time at his same job and accomplish the same job functions. Further, there is nothing in the record to suggest the few restrictions recommended by Plaintiff's treating physician are so severe that Plaintiff cannot complete his job

duties.[4] Additionally, no physician has restricted any other part of Plaintiff's life. Therefore, as Plaintiff's life after the accident is not significantly different than his life before the accident Plaintiff cannot meet the third step in the *Kreiner* analysis.

### III. CONCLUSION

For all these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment.

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: July 16, 2008

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on July 16, 2008.

s/Denise Goodine
Case Manager

---

[4] Plaintiff and Defendants fail to address the second step of the *Kreiner* analysis. As the Court has found Plaintiff's claim fails to meet the third step in the analysis, the second step need not be addressed.